# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TERRI CROWLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MOOSABEC CSD; SCHOOL UNION 103; | ) |
| DENIS HOWARD, in his individual capacity as | ) |
| Superintendent of Moosabec CSD and School | ) |
| Union 103.; and | ) |
| JULIE FARRIS, in her individual capacity as | ) |
| Board Chairperson of Moosabec CSD and School | ) |
| Union 103. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiff Terri Crowley complains against Defendants Moosabec Community School District, School Union 103 (collectively, the "District"), Denis Howard, in his individual capacity as Superintendent of the District, and Julie Farris, in her individual capacity as Chair of the District Joint School Committee as follows:

## PARTIES

1.      Plaintiff Terri Crowley ("Plaintiff") is a resident of Addison, Washington County, Maine.  She was employed by Defendants from 2001 until her employment was unilaterally terminated on October 15, 2018.

2.      Defendants Moosabec Community School District and School Union 103 are a community school district representing Jonesport and Beals Island, Maine.  Its offices are located in Jonesport, Washington County, Maine.

3. Denis Howard was at all material times the Superintendent of Schools for Moosabec CSD and School Union 103 and was charged with supervision and management of all schools and all administrative departments within the District.

4. Julie Farris was at all material times the Chair of the District's Joint School Committee and charged with supervision and management of its actions.

## JURISDICTION AND VENUE

5. This Court's jurisdiction is based upon 28 U.S.C. § 1331 as the allegations raise questions of federal law.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as all acts complained of occurred within the District of Maine. Under L.R. 3(b), this action is properly filed in Bangor because events occurred in Washington County.

7. Plaintiff has exhausted all necessary administrative remedies under the Maine Human Rights Act, Maine Whistleblowers Protection Act, and Americans with Disabilities Act prior to bringing this action.

## FACTUAL ALLEGATIONS

8. Plaintiff worked as a Secretary/Bookkeeper for the District from 2001 until her employment was terminated on October 15, 2018.

9. Plaintiff met or exceeded the District's performance expectations.

10. Until Plaintiff's termination, she worked subject to an employment contract covering the period from July 1, 2018 through June 30, 2019.

11. Pursuant to the contract, Plaintiff received a salary of $36,866 per year, among other rights and benefits. The contract was renewed as a matter of course on an annual basis, with adjustments to the compensation amount.

12. Plaintiff typically worked four days per week during the school year. Summer hours were flexible based on the time it took to accomplish the assigned duties of her position.

13. In December of 2017, Plaintiff was out of work for a month due to an "atypical brain tumor."

14. On December 28, 2017, Plaintiff underwent surgery to remove the tumor. She returned to work on January 28, 2018.

15. Plaintiff worked full-time from January 28, 2018 until March 13, 2018, when she began a 6-week course of radiation treatment and she worked an average of three days per week. She returned to full-time on or about April 25, 2018.

16. Defendant never discussed a medical leave under the FMLA or the possibility of a short-term disability leave with Plaintiff for either the leave she took for surgery or for radiation treatment.

17. When Plaintiff returned to work, her co-worker, April Carver, became increasingly hostile toward her.

18. Among other things, Ms. Carver routinely withheld documents and information that prevented Plaintiff from doing her job. Plaintiff believed that Ms. Carver was exploiting Plaintiff's vulnerable state due to her medical conditions, in an attempt to compel her resignation.

19. Plaintiff reported Ms. Carver's hostility and obstructionism, and why she felt harassed, to Superintendent Dennis Howard on several occasions.

20. Mr. Howard did nothing to address the complaints or conduct.

21. The continued stress caused by Ms. Carver's conduct, and Mr. Howard's refusal to address it, had severe effects on Plaintiff's mental health.

22. On July 12, 2018, Plaintiff went to her primary care physician in connection with the stress and anxiety she experienced at work. Her physician advised her to take a medical leave of absence because she was especially vulnerable to stress and anxiety as she recovered from her medical treatments.

23. Plaintiff's physician diagnosed Plaintiff with generalized anxiety. He wrote her a note to stay out of work, which Plaintiff submitted to Mr. Howard.

24. Plaintiff began her leave on July 13, 2018.

25. On August 6, 2018, Plaintiff's physician wrote another letter to Mr. Howard, informing him that Plaintiff should remain on leave to allow her health to return and to relieve her stress. He also informed Mr. Howard that he had started Plaintiff on medication and a restorative health program.

26. On August 9, 2018, Mr. Howard acknowledged receiving the letter from Plaintiff's physician, and told Plaintiff that he presented it to the Joint School Committee Members. However, he informed Plaintiff that since there was no "actual request" from Plaintiff, the Joint School Committee took no action on Plaintiff's request for disability leave.

27. Mr. Howard instructed Plaintiff to submit a request for leave before the next Joint School Committee meeting at 5 p.m. on August 15, 2018, and told her that "a simple email would be sufficient."

28. On August 15, 2018, at 2:09 p.m., Plaintiff emailed Mr. Howard stating that her physician had put her on short-team disability leave. She stated that "this ensures [she] cannot be terminated for this leave and in 3 months he will evaluate [her] situation and determine if [she] is capable of returning to work."

29. Relying on her doctor's advice, Plaintiff was invoking protection under the Family and Medical Leave Act ("FMLA") (the only statute that provides 3 months job protection for illness-related absence from work).

30. Although Plaintiff did not explicitly mention FMLA, Mr. Howard and the Joint School Committee should have recognized this as a request for FMLA leave, and should have informed her of her rights under the statute.

31. Neither Mr. Howard, nor any members of the Joint School Committee spoke to Plaintiff about her rights or eligibility for FMLA leave or any other disability leave of absence.

32. Plaintiff expected to return to work on October 23, 2018. She would have returned earlier if she had been informed that her request for leave was not approved, or that her employment was in jeopardy if she did not return earlier.

33. Plaintiff also had sufficient accumulated sick leave, vacation time, and personal days to cover the entirety of her absence from work.

34. While Plaintiff was on leave, the Joint School Committee voted to give Plaintiff's harasser, Ms. Carver, an $18,200 annual raise.

35. On October 16, 2018, the Joint School Committee met for a regularly scheduled meeting.

36. At no time was Plaintiff informed that her employment would be discussed at the meeting.

37. During the meeting, the Joint School Committee entered executive session. When they returned to regular session, Board Chair Julie Farris announced that Plaintiff's position was eliminated, "effective immediately."

38. The Joint School Committee also voted to create another secretary position to handle the work typically performed by Plaintiff. In addition, the Joint School Committee voted to increase the superintendent's position from two to three days per week, effective June 1, 2019.

39. Mr. Howard informed Plaintiff of her termination the following day.

40. Plaintiff then requested an opportunity to appeal her termination.

41. On December 5, 2018, the Joint School Committee heard Plaintiff's appeal in executive session. It decided to "take no action" with respect to Plaintiff's request for reinstatement, backpay, and attorney's fees. In effect, it affirmed its decision to terminate Plaintiff's employment.

## COUNT I
### Disability Discrimination: Disparate Treatment/Failure to Accommodate/Hostile Work Environment – MHRA and ADA vs. Defendants Moosabec CSD and School Union 103

42. Plaintiff repeats the allegations contained in Paragraphs 1 through 41.

43. Plaintiff is a qualified individual with a disability, or was regarded as such, who was able to perform the essential functions of her job with or without reasonable accommodations. She met or exceeded all performance expectations.

44. As set forth above, Defendant discriminated against Plaintiff with respect to the terms, conditions or privileges of her employment based on her disability, or alternatively, on Defendants' perception that Plaintiff was disabled; treated Plaintiff differently than other employees who were not disabled; subjected Plaintiff to intolerable working conditions; terminated her employment; and denied without justification Plaintiff's requests for reasonable accommodations.

45. As set forth above, Ms. Carver harassed Plaintiff and created an unwelcome and unreasonably hostile work environment based on or in response to Plaintiff's status as a person with a disability. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive work environment. Ms. Carver's objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it to be hostile or abusive, and Plaintiff did in fact perceive it to be so. Defendants are liable under the MHRA and ADA because Plaintiff complained to Mr. Howard about the harassment and discrimination and Defendants took no action to address it.

46. As a direct and proximate result of Defendants' actions, as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from October 2018, with prejudgment interest;
    C. Compensatory damages;
    D. An award of reasonable attorney's fees and all costs; and
    E. All other damages to which plaintiff may be entitled.

## COUNT II
### Disability Discrimination: Disparate Treatment/Failure to Accommodate/Hostile Work Environment – Section 504 vs. Defendants Moosabec CSD and School Union 103

47. Plaintiff repeats the allegations contained in Paragraphs 1 through 46.

48. Section 504 of the Rehabilitation Act of 1973 provides: "[n]o otherwise qualified individual with a disability ... shall, solely by reason of [her] disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" receiving federal funds. 29 U.S.C. § 794(a).

49. Plaintiff was at all times a "qualified individual with a disability."

50. Defendants received federal funds in 2018.

51. Through its acts and omissions above, Defendants discriminated against Plaintiff with respect to the terms, conditions or privileges of her employment based on her disability; treated Plaintiff differently than other employees who were not disabled; failed to engage in good faith in the interactive process with Plaintiff; subjected Plaintiff to intolerable working conditions; terminated Plaintiff's employment; terminated Plaintiff's employment; and denied without justification Plaintiff's requests for reasonable accommodations.

52. As set forth above, Ms. Carver harassed Plaintiff and created an unwelcome and unreasonably hostile work environment based on or in response to

8

Plaintiff's status as a person with a disability.  Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive work environment.  Ms. Carver's objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it to be hostile or abusive, and Plaintiff did in fact perceive it to be so.  Defendants are liable under the Rehabilitation Act because Plaintiff complained about the harassment and discrimination and Defendants took no action to address it.

53. As a direct and proximate result of Defendants' actions, as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Section 504:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from October 2018, with prejudgment interest;
    C. Compensatory damages;
    D. An award of reasonable attorney's fees and all costs; and
    E. All other damages to which plaintiff may be entitled.

## COUNT III
**Retaliation – MHRA and ADA**
**vs. Defendants Moosabec CSD and School Union 103**

54. Plaintiff repeats the allegations contained in Paragraphs 1 through 53.

55. As set forth above, Defendants retaliated against Plaintiff with respect to the terms, conditions or privileges of her employment based on her disability; interfered with Plaintiff as she exercised her rights to be free from disability-based discrimination; terminated Plaintiff's employment; and created intolerable working conditions because Plaintiff complained about Defendants' unlawful acts and

otherwise opposed her employer's conduct in allowing her co-worker's discriminatory and hostile conduct to persist, in violation of the MHRA and ADA.

56. As a direct and proximate result of Defendants' actions, as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

- A. Reinstatement, or front pay in lieu of reinstatement;
- B. Back pay from October 2018, with prejudgment interest;
- C. Compensatory damages;
- D. An award of reasonable attorney's fees and all costs; and
- E. All other damages to which plaintiff may be entitled.

## COUNT IV
### Retaliation – Section 504
**vs. Defendants Moosabec CSD and School Union 103**

57. Plaintiff repeats the allegations contained in Paragraphs 1 through 56.

58. As set forth above, Defendants retaliated against Plaintiff with respect to the terms, conditions or privileges of her employment based on her disability; interfered with Plaintiff as she exercised her rights to be free from disability-based discrimination; terminated Plaintiff's employment; and created intolerable working conditions because Plaintiff complained about Defendants' unlawful acts and otherwise opposed her employer's conduct in allowing her co-worker's discriminatory and hostile conduct to persist, in violation of Section 504 of the Rehabilitation Act.

59. As a direct and proximate result of Defendants' actions, as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Rehabilitation Act:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from October 2018, with prejudgment interest;
C. Compensatory damages;
D. An award of reasonable attorney's fees and all costs; and
E. All other damages to which plaintiff may be entitled.

## COUNT V
### Retaliation – MWPA
### vs. Defendants Moosabec CSD and School Union 103

60. Plaintiff repeats the allegations contained in Paragraphs 1 through 59.

61. As set forth above, Defendants retaliated against Plaintiff with respect to the terms, conditions or privileges of her employment based on her reports regarding unlawful discrimination and a hostile work environment.

62. Plaintiff's reports constituted protected activity under the Maine Whistleblowers' Protection Act; to wit, acting in good faith, she reported what she reasonably believed to be unlawful discrimination and harassment by her co-worker, and reported that she needed leave from work to deal with the emotional and psychological health conditions that her co-worker's conduct had caused.

63. Plaintiff suffered adverse employment action when her employment was terminated as a result of her protected reporting activities.

64. There is a direct causal link between Plaintiff's protected activity and the adverse employment action to which she was subjected.

65. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA/MWPA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from October 2018, with prejudgment interest;
C. Compensatory damages;
D. An award of reasonable attorney's fees and all costs; and
E. All other damages to which plaintiff may be entitled.

## COUNT VI
### Breach of Contract
### vs. Defendants Moosabec CSD and School Union 103

66. Plaintiff repeats the allegations contained in Paragraphs 1 through 65.

67. As set forth above, at the time of Plaintiff's employment termination, she was working subject to an employment contract covering the period of July 1, 2018 through June 30, 2019.

68. Plaintiff performed all conditions set forth in her employment contract.

69. Defendants breached the employment contract by terminating her employment without cause or notice on October 15, 2018.

70. As a direct and proximate result of the breach, Plaintiff has been damaged and is entitled to recover damages in the amount of approximately $23,400, plus interest and the value of benefits lost.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief:

A. Compensatory and consequential damages of $23,400 plus interest and the value of all lost benefits
B. An award of reasonable attorney's fees and all costs; and
C. All other damages to which plaintiff may be entitled.

## COUNT VII
## Violation of Civil and Due Process Rights – 42 U.S.C. § 1983
## vs. All Defendants

71. Plaintiff repeats the allegations contained in Paragraphs 1 through 70.

72. 42 U.S.C. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

73. By virtue of her nearly 17-year employment history, and the terms of her employment contract, Plaintiff had a protected property or liberty interest in continued employment with Defendants.

74. As set forth above, Defendants Howard and Farris, while acting under the color of state law, violated Plaintiff's constitutional rights, including her right to equal protection under law and substantive due process rights, when it terminated her employment without notice or cause.

75. As set forth above, the actions of Defendants Howard and Farris, in their capacities as Superintendent and Board Chair, respectively, constitute official policies or practices of the District.

76. Plaintiff has been injured as a direct result of Defendants' actions.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under Section 1983 and/or at common law:

    A.  Reinstatement, or front pay in lieu of reinstatement;
    B.  Back pay from October 2018, with prejudgment interest;
    C.  Compensatory damages;
    E.  An award of reasonable attorney's fees and all costs; and
    F.  All other damages to which Plaintiff may be entitled.

## COUNT VIII
### Interference and Retaliation in Violation of the Family Medical Leave Act – 29 U.S.C. § 2601 et seq. (FMLA) vs. Defendants Moosabec CSD and School Union 103

77.    Plaintiff repeats the allegations contained in Paragraphs 1 through 76.

78.    Plaintiff was qualified and eligible to receive medical leave benefits under FMLA.

79.    Defendants are subject to the provisions of FMLA.

80.    Plaintiff provided Defendants with sufficient notice of her disability and need for protected medical leave.

81.    Defendants approved Plaintiff's requested medical leave, but denied her the benefits of that leave insofar as it terminated her employment as a direct result of her use of medical leave.

82.    As set forth above, Defendants intentionally and willfully interfered with Plaintiff's rights to take FMLA leave by terminating her employment while on medical leave.

83.    As set forth above, Defendants failed to acknowledge that she had requested protected medical leave under FMLA.

84.    As a direct and proximate result of Defendants' actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the FMLA:

A. Back pay from October 2018, with prejudgment interest;
B. Applicable liquidated damages;
C. Reinstatement or front pay in lieu of reinstatement;
C. Compensatory damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

**PURSUANT TO RED. R. CIV. P. 38(b), PLAINTIFFS REQUEST TRIAL BY JURY OF ALL CLAIMS SO TRIABLE BY RIGHT.**

<u>**Dated**</u>: November 5, 2020          Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford (james@cliffordclifford.com)
*/s/ Andrew P. Cotter*
Andrew P. Cotter (andrew@cliffordclifford.com)

CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200